## Vogler v. Commonwealth.

(Decided Oct. 2, 1934.)

GUY BRIGGS for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

Edmund Vogler has been convicted in the Franklin circuit court for the crime of storehouse breaking and sentenced to three years' imprisonment, and he is appealing.

In seeking a reversal his counsel argue that incompetent evidence was admitted over his objection; that the verdict is so contrary to the evidence as to indicate bias and prejudice; and that this prejudice was occasioned by improper argument concerning the incompetent evidence on the part of the commonwealth's attorney in his closing address before the jury.

The indictment charges, and the evidence clearly discloses, that the store of the Great Atlantic & Pacific Tea Company on Holmes street in Frankfort was broken and entered on the night of August 15 and cigarettes of a value of about $175 and two gold watches were taken therefrom. There is no question made as to the sufficiency of the evidence concerning the commission of the crime. The only question involved is the identity of the guilty party.

Henry Portwood, the manager of the store, testified as to the quantity and value of the cigarettes taken and that he had two gold watches in the store which were taken at the same time; that one of the watches had been pawned to him by W. M. Absher and the other by another person; that ten days or two weeks after the store had been broken he went to the home of Absher and there saw the watch which Absher had pawned to him; that Absher returned the watch to him, or at least he took possession of it, and Absher told him where he had procured it. He further testified that appellant had on one or more occasions prior to the robbery been seen in the store as a customer. Absher testified that some time prior to August 25, 1933, he pawned a gold

watch to Henry Portwood and at the time he did so saw another gold watch in Portwood's possession; that about eight days after the store had been robbed he met Edmund Vogler and Howard True, and they proposed to trade him a gold watch which they had in their possession for two gallons of whisky and $1 in cash and delivered the watch to him on his agreement to deliver the whisky and the cash later; that being unable to procure the whisky he called appellant the next morning and arranged to meet him on the old capitol lawn. When he met Vogler, he told him he had been unable to procure the whisky and asked him if the watch that had been turned over to him was "hot" and Vogler replied in the affirmative. He stated that he recognized the watch as the one he had seen in the store when he pawned his watch to Portwood; that he described his watch to Vogler and asked him if he had it, that Vogler replied that he did not but could get it for him, and did go get the watch and delivered it to him in exchange for the one previously turned over to him; that this watch was the same that he had pawned to Portwood; that on the following day Portwood came to his house to deliver some groceries, saw the watch on a table, and took possession of it.

On cross-examination he stated that he had formerly been a farmer but for the last two or three years had been living in Frankfort without regular employment and doing such work as he could find. He testified that he was not a bootlegger, but admitted that on various occasions he sold whisky. He further admitted that he did not communicate to Portwood the fact that he had regained possession of the watch and that at one time he had offered to resell it to Vogler for $5.

Bertie Terrell testified that at the time of the robbery he was operating a grocery store and pool room on the Versailles pike near Frankfort; that on the night of August 30, some time after 12 o'clock, appellant came to his place of business where he was sleeping, awakened him, and offered to sell him fourteen cases of cigarettes; that some of the cases containg the cigarettes had stamped on them the name of A. L. Coleman and certain serial numbers; that other cases in the lot delivered him by appellant had the place cut out where the name and serial number ordinarily would appear.

Appellant excepted and objected to the evidence of Terrell on the ground that it was incompetent and inadmissible, but this objection as well as the motion for a peremptory instruction at the close of the commonwealth's evidence were overruled. Appellant testified that he and Howard True worked for Richard Lynch, who at the time was conducting a marble works, and that one afternoon as they started down the street to get some whisky they met Absher in front of Duvall's place and that he offered to pawn Absher a watch until the following Saturday afternoon if the latter would get him two gallons of whisky and $1 in cash; that True made the trade and that the watch, a silver one which he had inherited from his father, belonged to him; that on the following morning Absher called him and arranged to meet him on the old capitol lawn; that when they met, Absher told him he was unable to get the whisky or the cash, and returned the silver watch; that he did not break into the store or have possession of any gold watch and had no transaction with Absher except the one in which the silver watch was involved.

On cross-examination he stated that on the night of September 15, 1933, he and James E. Spaulding left Frankfort on a freight train and went to St. Louis, where a cousin had promised him a job; that he procured the job and was at work when he and Spaulding were arrested on the charge against him and returned to Frankfort; that while in St. Louis he made no effort to conceal his identity. True fully corroborated Vogler's evidence with respect to the transaction with Absher.

Absher was recalled and shown the silver watch which had been produced in evidence by appellant and True and which they testified was the one that they had offered to trade to him for liquor and, after seeing the watch, stated that it was not the one given him on the occasion referred to in his original evidence.

Counsel for appellant has asked that this case be considered in connection with the record on an appeal of appellant from a judgment convicting him of breaking and entering the store of A. L. Coleman. The evidence in that case shows that the Coleman store was broken and entered on the night of August 30 and that on that night Vogler sold Bertie Terrell a quantity of cigarettes. On this appeal the evidence of the wit-

nesses is given in narrative form in the bill of exceptions, while on the other appeal the evidence was taken down by the court reporter and transcribed.

On the trial for breaking the Coleman store, Bertie Terrell testified that he bought the Coleman cigarettes from appellant and that he was thereafter convicted of receiving stolen property because of this purchase; however, he later testified that some of the cases of cigarettes purchased by him bore the name of A. L. Coleman and also a serial number, and on others no name appeared, the place where the name usually appeared having been cut out. It is also shown that Terrell's place was visited by officers and the cigarettes recovered under a search warrant, and some question is made in the other appeal concerning the competency of this evidence because of alleged defects in the search warrant and the affidavit under which it was issued. It is most earnestly argued by counsel for appellant that the evidence of Terrell in this case is incompetent and that the court erred in admitting it, and further that the jury was prejudiced by the closing argument of the commonwealth's attorney wherein he stressed this evidence as indicating appellant's guilt.

The main basis and insistence that Terrell's evidence is incompetent is that none of the packages purchased by him could be or were identified as coming from the A. & P. Store, however, the evidence shows that this store was broken into, and on the night the Coleman store was broken appellant sold cigarettes to Terrell. Some of the packages were marked with the name of A. L. Coleman and from others the name had evidently been cut off. Cigarettes had been taken from both stores, and there is evidence that appellant had in his possession two gold watches which were taken from the A. & P. Store and was offering to trade one of them. It is therefore at once apparent that the evidence is not incompetent on this ground. Generally speaking, one who knowingly receives stolen property is not an accomplice of the one who steals. There is an exception to the general rule, however, where there is an agreement, understanding, or conspiracy between the parties concerning the commission of the offense, Grady v. Commonwealth, 237 Ky. 156, 35 S. W. (2d) 12, but even if Terrell had been an accomplice of appellant, it could not be said that his evidence is without sufficient cor-

roboration. Since the evidence called in question was competent, it was not improper for the commonwealth's attorney to discuss it in his argument before the jury. Furthermore, the contention that the commonwealth's attorney made prejudicial statements in his closing argument would be without avail because none of the alleged prejudicial statements are made to appear in the bill of exceptions. In its final analysis the argument that the evidence is not sufficient to take the case to the jury nor to support their verdict goes to the credibility of the witnesses rather than to their evidence, and the credibility of witnesses is a question exclusively within the province of the jury.

Judgment affirmed.